Good morning. May it please the Court, my name is David Loy. I represent Christopher Newcomb in this appeal. I would like to reserve at least three minutes for rebuttal. Your Honors, I understand the Court has denied the motion to supplement the record with one dissent and granted the motion for judicial notice. The supplement, you wanted to introduce a declaration and we don't take evidence at the appellate level, but we would accept your representations as to the situation that Mr. Newcomb found himself in. Thank you, Your Honor. With that in mind, I will first address the mootness question, since that is the question which the Court requested supplemental briefing. If Mr. Newcomb is currently subject to or currently experiencing self-censorship, then he is certainly suffering an ongoing injury, which would prevent the case from becoming moot. This is a new theory on your part, is it not? The self-censorship? Correct, Your Honor. And if the Court does not find that the self-censorship is ongoing, then the case, though perhaps technically moot, certainly would qualify for the exception to mootness for cases capable of repetition yet evading review. Well, isn't that a new injury? Wouldn't he have to file a new lawsuit? I mean, that's a separate injury that you're alleging than the injury that you alleged in the complaint. The self-censorship would be a separate injury. Right. Isn't that a new injury? I mean, the original injury was the 2012 when he wanted to run? Correct, Your Honor. And that controversy, though, is certainly capable of repetition, because as of the 2012 election, there was an ongoing controversy over whether he had the right to run for office under the Hatch Act, to exercise his First Amendment right to run for office. The facts, as pleaded, show that the Office of Special Counsel exercised a rebuttable presumption that an election designated by state law as nonpartisan could be determined to be partisan if other candidates... Made it partisan. Made it partisan. Kind of a difficult ruling by the OSP. Well, it's an artifact of the statute, Your Honor, in that the way the statute reads, the issue is not whether the federal employee runs a partisan campaign. The issue is whether the election is partisan, and the election can be partisan in one of two ways. It can be designated as partisan under state law with candidates specifically identified as such on the ballot. Or even if it's an election like this one for school board where the ballot does not say or does not identify the candidate's party affiliation or does not identify any party affiliation. Nonetheless, the government, the OSC, looks at the totality of the circumstances and can find that the election has become partisan if other candidates besides the federal employee, A, seek the support of political parties, and B, accept the support of political parties, and C, receive support of political parties. And those are the facts as pleaded. So, I just want to go back to this new injury issue for a minute. I mean, if we decide that this action is moot because he did not run in 2012 and your complaint doesn't allege this self-censorship theory of injury, would it be appropriate for us to remand this matter to the district court and instruct the court to give you leave to amend the new theory? And then that would eliminate the mootness problem? Certainly, Your Honor. Yes, leave to amend should be granted to cure potential problems, and the court did not previously grant leave to amend. But, yes, certainly leave to amend would be appropriate. Because if neither we nor the district court didn't reach the merits, if we don't reach the merits, Mr. Newcomb will never get this resolved. Correct, Your Honor. And that's precisely the problem and why either by way of leave to amend or by way of capable of repetition yet evading review, the merits can be reached. Because there is injury not only from self-censorship, but also from the fact that the unresolved cloud of potential hatch act enforcement makes it effectively impossible for him to campaign and exercise his free speech rights effectively. And that's how you get around the mootness problem? Correct, Your Honor. The capable of repetition? Yes, Your Honor. Capable of repetition, which has two elements. One, the duration element, which this court has found virtually all election cases satisfy the duration element of that exception because elections are almost inevitably too short to allow for adjudication on the merits. And second, is there a likelihood the controversy would recur and it would recur for every election in which Mr. Newcomb would have to confront this dilemma of whether, you know, he can run and face the prospect of hatch act enforcement or not. And in which the voters can never be sure and he can never be sure whether he will be subject to enforcement. And to come back, you know, the facts here, the facts as pleaded are precisely those that have, that can lead to a finding to rebut the presumption of non-partisanship and show that the election is partisan. Because candidates, the other candidates receive party endorsements. Party endorsements don't exist in a vacuum. And OSC was very careful to say the fact of endorsement alone does not rebut, does not make the election partisan. But as the complaint makes out very clearly, endorsements don't exist in a vacuum. They only arise, the parties only give them, A, if the candidate seeks them out. And B, then the candidate gets concrete support from the party by way of campaign mailers. And those are precisely the facts in the record where OSC has said in its own correspondence, if a candidate seeks party support, if another candidate receives party support in the form of campaign mailers. And that's exactly what happens in these cases. The other candidates who seek party endorsement get party endorsement, only get it by seeking it. And then once they have it, they receive the support of the parties, concrete support through the campaign mailers. I'm curious. If they didn't seek it, but the party just decides to endorse them, would the argument be the same? The argument would potentially be the same, potentially be different. It would depend, if a party spontaneously endorsed a candidate, which they don't do, but if it did, the candidate would still then have the choice whether to accept the party's support. And that fact alone. Suppose he says, I don't accept. Another candidate, not my client, correct? Yes. If another candidate were to neither seek nor accept support. But say the Tea Party says, I like this man, we endorse him. He says, I don't accept it. Well, in that scenario, Your Honor, it's doubtful that the candidate and the party would be acting in concert. And the catch act would not apply. Most likely. When's the next election? 2014, every two years. So couldn't you, so Judge Huff said that you did not, in contrast to the case of Wilson, you did not allege any self-censorship, and that's why she ultimately dismissed the case under a prudential rightness. Was she in error to do that? On those facts, my position is yes, Your Honor, because the injury, self-censorship, though sufficient injury, my position is that self-censorship was not necessary injury. There's a line of cases in the First Amendment retaliation context which suggests that a plaintiff that persists in his or her own speech should not be deprived of the right to vindicate his or her free speech rights merely because he or she has persisted, even when subjected to a threat of retaliation. And I realize those cases arose in the damages context, but I suggest the principle applies certainly in the context of injunctive relief. You know, the other fact here that, you know, is relevant is that, you know, OSC is really not obligated to issue an advisory opinion, but when it last, it issued its last correspondence, you know, it suggested that it would have to investigate Mr. Newcomb to determine whether there was a hatchet violation, even though the facts were, you know, clear and undisputed and provided to them. And, you know, the spectrum of investigation itself inherently chills speech. And so for all those reasons, I do suggest the case is, you know, the controversy is certainly likely to recur in any election that is coming forward because you will be, you know, Mr. Newcomb would be in the exact same position in any future election. So is he planning to run again, file to run again? Based on the declaration, Your Honor, which I realize the court has not. Well, I said you can make the representation to the court, which we will accept. At this point, Your Honor, I can represent that he would run if his right, if he could be guaranteed that his, he would have the right to do so free of enforcement. So that he could, A, not have to fear enforcement for whatever the repercussions I realize may not result in removal from employment, but there could still be other repercussions. And B, because he simply can't campaign effectively with this unresolved cloud hanging over him, which the special counsel has herself acknowledged. But doesn't that raise a rightness issue on whether or not there would be enforcement? The rightness issue is before the court, Your Honor. But as I've suggested, the case is fit for review because it arises on concrete and specific facts. There is hardships in Mr. Newcomb. And the injury is inherent in the threat of enforcement. The injury is latent in the statute. I mean, the threat of enforcement is latent in the statute. And with that, I will, unless the court has further questions, I reserve remaining time for rebuttal. Thank you, counsel. Thank you. Good morning, Your Honors. Samantha Heifetz for the United States. New claims of self-censorship that were presented in Mr. Newcomb's October filings with the court do not allow him to evade the basic requirements for justiciability. So even with the new claim of self-censorship, which I would just note that when one looks at those filings, Mr. Newcomb's claim wasn't that he's self-censoring out of fear of prosecution specifically. It was a concern he articulated about asking voters to vote for him and being concerned that their votes would be nullified, contingent upon some possibility of enforcement. But this notion of a possibility of enforcement is crucial. We're talking still, self-censorship or not, about a pre-enforcement challenge. And we don't dispute, the parties don't dispute that the key factors in determining whether a pre-enforcement challenge, because, of course, pre-enforcement challenges represent an important exception to the normal rules about justiciability, that the key factors you look for, and this court has said this over and over again, we need an actual and well-founded fear of enforcement. The fact that someone articulates self-censorship, claims self-censorship, this court has said in cases like Getman's cited in our brief, a naked claim of self-censorship isn't enough. It has to be reasonable. So we go back to the importance of this court finding that the plaintiff has a well-founded fear. And there's three factors that we agree the court looks to in determining that, whether the plan of the plaintiff is unambiguously one that's going to violate the statute. The court has talked about ambiguity in cases like Wolfson as a reason. The problem here is that he tried to get an advisory opinion, and the advisory opinion itself doesn't really give him an answer. It doesn't provide him an answer. It's ambiguous and threatened. It's subject to the actions of potential opposing candidates. And how does he know what they're going to do? And then if they become endorsed by political parties and render the race partisan, then Mr. Newcomb is facing the threat of investigation and prosecution. So a few points there. I mean, I think Your Honor has identified some of the crucial ripeness problems that Mr. Newcomb's suit faces. So the facts that he presented to the Office of Special Counsel, he noted that other candidates had received endorsements. And he provided two flyers showing that other candidates had been included in flyers, one from the Republican Party, one from the Democratic Party. So OSC, when it issued its advisory opinion, the second advisory opinion, it took that specific fact into account and it said, look, simply the fact that these individuals have been endorsed by these political parties doesn't render, doesn't rebut the presumption of nonpartisanship, doesn't render this an election that ran afoul of the Hatch Act. OSC responded to the facts that it could because those were the facts presented. OSC hadn't undertaken an investigation and never undertook any investigation of the 2010 election, although Mr. Newcomb did run. That, of course, goes to when we talk about the factors that show whether or not there's a well-founded fear. One is what the person's plans are. Another is whether there's been a specific warning. Another is the history of enforcement. Here there was never a specific warning. There was never a cure letter issued by OSC in 2010 or now. There's no relevant history of enforcement that would point to suggest any threat here. It would be helpful if they would write back and say we won't enforce the Hatch Act against you under these circumstances. Well, there's no way to do that because when they were issuing this letter, the election hadn't yet concluded with the first letter. And the second letter, they hadn't undertaken an investigation. They never undertook an investigation. So they didn't have before them all of the relevant facts. They hadn't undertaken that kind of investigation to issue some sort of conclusive determination. They addressed the facts that were presented. They had these two flyers, and they said this isn't enough. Now, there is ‑‑ I understand Your Honor has suggested that this is a difficult decision or letter from OSC. The idea that there's a rebuttable presumption where you have a nonpartisan election that's named nonpartisan under state law, this idea goes back to the 1950s and the Brering case. And OSC has always, since the 1950s, and MSPB, recognized that whether or not an election is partisan or nonpartisan doesn't just turn on some label, but ultimately turns on the conduct of the candidates. And as opposing counsel acknowledged, that's because that's how the statutory language is written. And there have been suits brought claiming that the Hatch Act is overbroad or overly vague. Those have been rejected. And the McEntee case is an important one to look to for the fact that the Federal Circuit, the circuit that under the administrative scheme here is charged with reviewing MSPB determinations, the Federal Circuit has said, look, there's no bright line rules about the partisanship, nonpartisanship divide because we have to look at the total picture. We have to look at all the facts. Excuse me, counsel. If you look at the total picture, he's saying I have to run in fear of the application of the Hatch Act to me. What is he supposed to do? Well, as he notes, okay, we have this presumption of nonpartisanship. He runs. He claims that his plan is to run an unscrupulously nonpartisan election. So I would just note as an aside, quite the opposite of the kinds of typical pre-enforcement challenges where we see people planning to violate the law, he says I plan to abide by the law. I don't know what the other candidates are going to do. Absolutely, and neither does OSC. So the way OSC's policies work, and Mr. Newcomb's complaint acknowledges this, and this is in the OSP there, standard operating practices, if they undertook an investigation, he would be made aware. And if they determined that there was a problem, he would be issued a cure letter. He would have an opportunity to pull out of the election or to resign his position. And that's really important. This Court has noted that where you don't have a letter like that in Sachs v. OFA, that's a clear indication that you don't have the ripeness, the threat of enforcement, the credible threat of enforcement that you need to find constitutional prudential ripeness. But how do we know that the investigation is going to take place before the election takes place? Well, Your Honor, here we have quite the opposite indication. Look, we're not dealing here in a vacuum. We have really important specific facts, not general facts, but facts specific to Mr. Newcomb. We know that he ran in 2010. OSC was aware of all of the facts of that election insofar as they were presented by Mr. Newcomb. And not only was he not investigated and not prosecuted, he was given a letter stating, look, based on the flyers you've given us, this election was presumptively nonpartisan. This Court has clear precedents that our briefs don't argue about. We are in agreement. We recognize the need for showing a plan to violate the law, specific warning, or a history of enforcement, that these are the critical factors that cases like Wolfson look to and Thomas. And these cases have been Valedictus del Sol cites back to Thomas. These things have not been overturned. And so here, it's not simply that we don't have reason to think that there's going to be enforcement. We have affirmative reasons to conclude that there's no well-founded fear, the kind that would justify the extraordinary justiciability basis that is a pre-enforcement challenge. Pre-enforcement challenges, of course, are not the norm. But you said that he could always pull out before the election takes place. After he's spent all the money, how does he campaign? I may pull out if I'm found to be in violation of the Hatch Act. Isn't this chilling his right? Well, cases like Winter, this Court's 1990 decision, talk about the fact that monetary loss is not a basis for finding ripeness. I mean, look, pre-enforcement challenges are premised on not concerns about lost money, but concerns about enforcement. And here, what we're looking at is an individual's future. But that's the way with the money. What does he tell the people when he's campaigning? And somebody asks him a question. Are you going to stay in this election, or is there a chance you'll pull out? If there's a chance you'll pull out, I'm not going to vote for you. Your Honor, the problem ultimately, and this goes back to Judge Wardlaw's question, is that pre-enforcement here, right, to be able to answer the kind of constitutional question that's being presented, we can't do it in the abstract. It's wholly unclear what sort of facts Mr. Newcomb would have, what sort of record Mr. Newcomb would have had the district court assess this case on. Okay, we don't have an investigation that was undertaken by OSC, as the statutory scheme provides for. We don't have any kind of cure letter that was issued that would have identified what the relevant factors were. What we have here is just a general concern, much like the one articulated at McEntee, that it's unfair that whether or not an election is partisan may turn on the conduct of other people. Well, with regard to enforcement history, I would note that OSC has never sought to enforce a hatchback violation in front of MSPB on the grounds that other candidates turned an election partisan, absent there being ballot designations that specifically identified individuals, candidates, as being affiliated with a particular party. The only cases where there have been these hatchback enforcements, you've either got the conduct of the candidate turning the election from nonpartisan to partisan, or you've got ballot designations. That's the general history, the backdrop that we're functioning against. But now, just looking at the constitutional question that it would seem Mr. Newcomb is trying to raise, whether it's permissible for an election to be deemed partisan because of other people's conduct, well, of course that's true. I mean, there's really no question when one looks at cases like Mitchell and letter carriers and McEntee, there's no question, right, that even if Mr. Newcomb said, I'm going to conduct an unscrupulously partisan campaign for president. I should be allowed to run. It's unconstitutional under the Hatch Act to keep me out of the presidential election. I mean, I don't understand his complaint to be suggesting that kind of argument. There's recognition that no matter how nonpartisan a given government employee may purport that he or she will be, that an election can always be determined to be partisan because of conduct of other people. I mean, that's clear in the statute, and that's consistently upheld by federal circuit Supreme Court precedent. There's not been any kind of ruling to suggest that there's a problem with recognizing that partisanship under the Hatch Act is a conclusion that's reached based on looking at the totality of the circumstances, all of the facts peculiar to a given case. So he has to take the risk of running and can't get any pre-election relief at all under your theory? Well, I'm not sure that I'm saying that, Your Honor. What I'm saying is that in this case, on the letters, on the complaint that he filed here, there'd be no basis for adjudication. But he can seek an advisory opinion based on the evidence that he submitted to the Hatch Act, but he wants more, and it's unclear what that more could look like or what it could be based on. Look, Your Honor, if he had gotten a letter saying that there was a Hatch Act violation, well, the inquiry at that point would be different, and I don't know what the outcome would be. In cases like AFL-CIO v. O'Connor, where an individual sought an advisory letter, but the facts on which that advisory letter was sought were very vague. The court, the D.C. Circuit, and this is a 1984 case, said the case was unripe. That was a much closer case because the plaintiffs had sought an advisory letter. This was about a Hatch Act violation. Their request was quite vague. The OSC came back and said, ultimately, in the letter, that they thought the conduct at issue was problematic. And the D.C. Circuit, in a decision by then-Judge, now Justice Ginsburg, ruled that the case was unripe because there wasn't more of a factual premise and there wasn't a more firm decision from OSC. The court thought it would be problematic to intervene in that instance given how there wasn't a factual predicate for a major constitutional assessment. Now, here, I mean, that's- May I just ask about that, then? It's clearly not ripe on the original theory, but we have a new theory, the chilling theory. You're chilling my First Amendment rights. Is there any reason why we shouldn't vacate and remand and let the- since it's not moved, if it's capable of repetition, which it is, to let the district court make a decision on that basis? Your Honor, self-censorship, an assertion of self-censorship, whatever it may be based on, does not allow a plaintiff to evade the necessity of showing that that self-censorship is reasonably based on a well-founded fear of prosecution, of enforcement. That is still part of the self-censorship doctrine. So that does not help Mr. Newcomb because here, again, we don't have the kind of factual predicate. We've got advisory letters to the contrary. We have a long history of enforcement, all to the contrary, of helping him to establish any kind of well-founded fear of enforcement. We know that he ran in 2010 and no action was taken against him, despite the fact that the authorities were clearly aware of what was going on because he had raised it to them. Just to go back to Judge Rawlinson's question, here it's- Look, there are many other factual predicates that could be possible. So even with a different kind of advisory letter from OSC, it's an open question as to whether or not the case would be right, but one could at least imagine a scenario in which Mr. Newcomb would get a cure letter, a letter warning him that in OSC's view, the election had become partisan and he would be able to come into court and get what would still be pre-enforcement review because no enforcement action had affirmatively been taken, but there would be at least there presumably a factual predicate specifically showing what issue needs to be resolved by the court. At this point, it's quite unclear what factual questions- because again, we go back to the fact that it's been long recognized that the partisan-nonpartisan distinction is not a bright line rule, but that it does. And we agree about this turn on the totality of the circumstances, these multi-factors. Well, you're over your time. I apologize. How do you distinguish the Wolfson case? The Wolfson case, did you say? Yes. So the Wolfson case is actually very helpful, I think, to the government's position. It's very instructive. In Wolfson, the court, again, first deals with mootness, but then turns to ripeness, reifying the fact that here, even if this court holds that this matter is not moot, ripeness needs to be addressed. There, the court, in looking at ripeness, focuses on whether or not there is an active and well-founded fear. So that remains critical whether we're talking about self-censorship or not. And there, the court addresses the three factors that I've been talking about, whether there's a concrete plan, whether or not there's a specific warning, whether or not there's a history of enforcement. In Wolfson, the claims that the court held were ripe were ones where the plaintiff had received an advisory letter from the relevant ethics committee informing him that they thought that there was a problem, that he would be in violation if he did the things he planned to do. He wanted to do certain things, and the ethics committee said, yes, if you do those things, that would violate the judicial canon. There were other claims that he tried to bring that the court said were not ripe. Notably, with regard to those claims, they said he didn't, he hadn't shown a credible threat of enforcement. And there, it turned on the fact significantly that, you know, he hadn't gotten that kind of unambiguous letter from the relevant ethics committee. He, he... If he were to file, amend his complaint and allege that he was going to enter this race, that he knew the other candidates to the race would get support and endorsements by the other political candidates, and that under those circumstances, the OSP would declare it to have been a partisan election, would that be sufficient to make it ripe? Your Honor, I'm not sure if I understand. You're talking now about Mr. Newcomb looking forward to some 2014 election. 2014. He's going to run, and he knows that these other people are going to run. Well, I'm not sure how he would know who's going to run, what endorsements they would... Well, he could very well know. I mean, in elections, you pretty well know. Well, I'm not sure that how he would know what endorsements they're going to receive or accept and what they're going to do with those endorsements, as well as other factors. Okay, let's just hypothetically, if he did know. But... I mean, I've been involved in elections, and you know in advance a lot of things that you can say with pretty much clarity. Well, we have an advisory letter saying, look, if other candidates, if you maintain a nonpartisan election, and all that happens is that other candidates go out and get these endorsements, and this flyer goes out with their names on the mailing, one from the Republican one. And that's all that happens, and that's all we know. The OSC has said we think that the presumption of nonpartisanship has not been rebutted. Right, but what if he goes further in his allegations? What if he can, consistent with Rule 11, go further in his allegations? To say what, Your Honor? To say something that would cross the line into partisanship. Well, Your Honor, that's the whole question, is we don't know what sort of facts might develop, and it's not the work of courts to engage in sort of abstract disagreements about every hypothetical that Mr. Newcomb might be able to imagine. We need some kind of factual predicate. I'm saying if he were to amend his complaint and allege facts... I can't imagine how he would... Have you ever been involved in politics? I can imagine it. Okay, I'm trying to understand what specifically. He may be able to say something specifically that has been prosecuted. Well, Your Honor, what's never been prosecuted is that there has never been a case in which OSC has brought enforcement action against an individual based simply on the fact that other people in the election sought or obtained or benefited from, as he puts it, political endorsements. It's always required in the past, if that's what we're using as the basis for contextualizing the credibility of this year. So you're saying go forward and run without any threat of prosecution? I'm saying that he hasn't shown a credible threat of prosecution. I'm not taking a position as to what the scope of the law is. We haven't briefed the merits here. OSC hasn't had a case before that would have... That's really the problem. That's why... He would need to run as he did. And then, I mean, all we know so far is that we haven't had a problem. You know, that's just what the facts have been. So whether that's a good thing or a bad thing, I mean, essentially he's gotten to date what he has wanted. He seems to want more. That more... He wants a guarantee as opposed to a presumption. I think that's right, Your Honor. He wants prospective immunity. And that's not what OSC is capable of providing, nor the courts. It's simply, given what the statutory language is and how that's always been understood, there are many factors that would determine... All right, Counselor. You're repeating yourself now, and you're well over your time anyway, so thank you. Thank you, Your Honor. Thank you, Your Honors. Very briefly, on the issue of actual and well-founded fear of enforcement, OSC's own advisory opinion certainly lends weight to the argument that there is an actual and well-founded fear. At ER 39, though OSC did state that the mere fact of endorsement standing alone does not make the election partisan, it did say, however, a non-partisan election could become partisan if, for example, one of the candidates were to seek or advertise a political party's endorsement. I'm paraphrasing here, telescoping. Or receive the support of a political party in the form of campaign publications, among other things. And those are facts that occur in this election. Party candidates don't obtain the endorsement unless they seek it. Did that occur in the 2010 election? Yes, it did. And there was no prosecution or investigation? There was no prosecution or investigation out of the 2010. But the problem is this advisory opinion raises as many questions as it answers. Raises more questions than it answers. That, combined with the specter of investigation, also creates a chilling effect, or at least a threat of enforcement, that will recur because the circumstances of these elections will recur. And the letter itself is not a disavowal of enforcement. A disavowal of enforcement is really one of the factors the courts look to in the cases I've cited. The fact that he wasn't investigated or prosecuted in 2010 does that in any way lessen the specter of enforcement in the future, in your view? Not necessarily, Your Honor. OSC is statutorily obligated to investigate. Cases have, you know, the factors of actual well-founded fear, threat of history of enforcement, threat of prosecution, these are not elements of a test which all must be met. This Court has found threat of enforcement and ripeness without, for example, history of enforcement or expressed threat of prosecution. There's certainly, at the least, an implicit specter, if not threat of investigation and prosecution arising from... But the issue is, is it well-founded in light of the history of this case? In light of the history of this case and in light of OSC's own representations, you know, a non... Again, at page 39 of the record, a nonpartisan election could become partisan if, for example, other candidates seek endorsement and then they receive party support. And that could lead to an inference that they are acting in concert with the party, which is enough to create hatchback liability. Now, unless the Court has further questions, I see my time has expired, and I will see you on the horse. All right, thank you very much, Counsel. Newcombe v. U.S. Office of Special Counsel is submitted. We have previously submitted on the briefs Allstate Insurance Company v. Baglioni, and this Court will adjourn this session for today. Thank you.
judges: Nelson, Wardlaw, Rawlinson